STATE OF VERMONT
ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re: Stoddard Site Plan | } | Docket No. 254-12-05 Vtec |
| (Appeal of Adams) | } |  |
|  | } |  |

Decision and Order on Cross-Motions for Summary Judgment

Appellant John T. Adams appealed from the decision of the Planning Commission of the Town of Fair Haven approving Appellee-Applicant (Applicant) Bruce Stoddard's application for site plan approval[1] to convert a former nursing home into a three-unit multi-family residential dwelling at 28 Prospect Street. Appellant appeared and represents himself; Appellee-Applicant is represented by Phyllis R. McCoy-Jacien, Esq. The Town did not enter an appearance in this matter.

Both parties have moved for summary judgment on the issue of whether Applicant's proposal is a three-unit multi-family residence. The following facts are undisputed unless otherwise noted.

Applicant owns a 1.4-acre parcel of land at 28 Prospect Street in the Residential zoning district, consisting of a .71-acre lot ("the corner lot") at the corner of Prospect Street (Route 4A) and Pleasant Street, and the adjacent .70-acre lot ("the adjacent lot") westerly along Prospect Street. The property is currently improved on the corner lot with two buildings. The main building was most recently in use as a nursing home, and consists of a two-story main house approximately 39' x 45' in footprint, located 63 feet from the

---

[1] While the decision is headed "site plan review and conditional use," the application was only in fact for site plan approval and the Planning Commission in any event lacks jurisdiction over conditional use applications.

Prospect Street frontage and 15½ feet from the Pleasant Street frontage, with a large one-story wing extending to the west, located 68 feet from the Prospect Street frontage and approximately 70′ x 40′ in footprint. The second building, labeled on the site plan as "carriage house," is approximately 43' x 60' in footprint and is currently in use as a single apartment. The adjacent lot formerly was improved with a two-family house no longer on the property, and also has a 24' x 33' barn midway towards the rear of the property adjacent to the boundary between the two former lots. An existing 60' x 80' parking lot is located at the property's southeasterly corner, adjacent to the railroad tracks, with access from Pleasant Street.

Applicant proposes to develop the property as a whole to contain six residential apartments in three buildings. The Zoning Regulations define "multi-family dwelling" to allow the dwelling units to be located in a group of buildings or portions thereof, rather than requiring them to be in a single building or in attached buildings. §140. As the property contains 61,419 square feet in area, it is sufficient in size for six multi-family units (at 10,000 square feet per unit, see §240), if the property is served by municipal sewer and water.

Applicant proposes to construct a new townhouse-style two-unit residence, approximately 27′x 40′ in footprint, in the location of the former two-family residence on the adjacent lot. He proposes to continue the use of the existing carriage house apartment as a single-unit residence. Applicant proposes to convert the former nursing home building into a three-unit residence, with one apartment on each floor of the former main house and one apartment in the former wing. As the former nursing home building is equipped with an elevator, Applicant proposes that at least one bedroom and bathroom in each apartment unit will be handicapped-accessible.

In connection with the proposal, Applicant proposes to reconfigure the parking area in the rear of the corner lot with access to Pleasant Street to contain fifteen parking spaces

2

with downcast, motion-sensitive lighting and to construct an additional parking area with eighteen spaces with downcast, motion-sensitive lighting behind the proposed townhouse.

Appellant contests whether the three apartments proposed to be created by the conversion of the former nursing home qualify as residential apartment units, for consideration within the use category of "multi-family residence" as a permitted use in the district, or whether what is proposed for the former nursing home building should instead be considered to be a rooming house, dormitory or lodge type of use not allowed (either as a permitted use or as a conditional use) in the district. §240.

The apartment proposed for the first floor of the main house portion of the former nursing home (the "first floor house apartment") is proposed to have a kitchen, a common area "lounge" or living room[2] and four bedrooms. Two bathrooms, each with a sink, toilet and shower, are available for use by any of the residents of that apartment. Two of the bedrooms have additional private bathroom facilities: one has a sink, toilet and shower, and one has only a toilet.

The apartment proposed for the second floor of the main house portion of the former nursing home (the "second floor house apartment") is proposed to have a kitchen, a common area "lounge" or living room and the potential for six[3] bedrooms. The application states that "[r]ooms will be utilized relative to bedrooms and common space at the tenants['] discretion," and that "[c]ommon areas could be unmarked room and rooms 1 and 2. . . ." Two handicapped-accessible bathrooms, each with a sink, toilet and

---

[2] One unlabeled room, on the east side of the unit, also appears to function as a common area, with access into the building from the Pleasant Street side directly into that room.

[3] Applicant proposes that only four of these rooms would be occupied as bedrooms, without any limitation as to the number of occupants of the apartment, but does not further describe how that limitation would be implemented or enforced.

3

shower, are available for use by any of the residents of that apartment, as is an additional shower room. Three of the bedrooms have additional private bathroom facilities: one has a sink, toilet and shower, and two each have a sink and toilet.

The apartment proposed for the wing of the former nursing home (the "wing apartment") is proposed to have a kitchen[4] and the potential for nine[5] bedrooms, with access from the Prospect Street side of the building into a central hallway. The application states that "[r]ooms will be utilized relative to bedrooms and common space at the tenants['] discretion," and that "[c]ommon areas could be . . . rooms 4, 6 and 9 on the wing." While it is possible that some other combination of two or more of the rooms (for example, the rooms labeled #4 and #9 together with the linen closet between them; or the rooms labeled #7 and #8, with access from the central hallway), could be converted to a common area "lounge" or living room for the wing apartment, such a conversion is not proposed on the present plans. One handicapped-accessible shower is available for use by any of the residents of that apartment; however, all the toilet facilities are associated with and accessible only through the potential bedrooms. One of the bedrooms has a private bathroom consisting of a handicapped-accessible sink and toilet. Each of the other eight potential bedrooms has its own sink in the bedroom, and shares access to a toilet and

_____

[4] For the purposes of this discussion we must assume that the kitchen on the common wall of the house and wing (the west wall of the first floor of the house and the east wall of the wing) is meant to be the kitchen for the wing apartment, rather than a second kitchen for the first floor house apartment; that is, that the wall would be constructed as described on the label ("remove existing door and construct wall to separate wing from 1st floor of main building") at the point of the arrow, rather than, as drawn, on the wing side of the appliances.

[5] Applicant proposes that only five of these rooms would be occupied as bedrooms, without any limitation as to the number of occupants of the apartment, but does not further describe how that limitation would be implemented or enforced.

4

shower with one other room.

Applicant proposes to limit the number of bedrooms in the three apartments in the former nursing home to a total of thirteen[6]: four in the first floor house apartment, four in the second floor house apartment, and five in the wing apartment. However, the site plan does not show how, as a practical mater, the limitations would be enforceable as to the additional rooms, or how they are proposed to be adapted to common use.

The term "dwelling unit" is defined in §140 as a "portion of a building occupied or suitable for occupancy as a residence and arranged for the use of one or more individuals <u>living as a single housekeeping unit</u>." §140, emphasis added. It does not pose any limit to the number of individuals living in the housekeeping unit. Zoning ordinances are interpreted according to the general rules of statutory construction. <u>In re Weeks</u>, 167 Vt. 551, 554 (1998). Thus, we first look to the plain meaning of the ordinance. See, <u>e.g.</u>, <u>In re Stowe Club Highlands</u>, 164 Vt. 272, 279 (1995). If the plain meaning "resolves the conflict without doing violence to the legislative scheme, there is no need to go further . . . ." <u>Lubinsky v. Fair Haven Zoning Bd.</u>, 148 Vt. 47, 49 (1986).

The term "housekeeping unit" is not further defined; however, it is a term used in the ordinances analyzed by the U.S. Supreme Court in the cases of <u>Village of Belle Terre (N.Y.) v. Boraas</u>, 416 U.S. 1 (1974), and <u>Moore v. City of East Cleveland (Ohio)</u>, 431 U.S. 494 (1977), and is a term that has been much analyzed by the courts. Even when an ordinance is defined more restrictively in terms of a housekeeping unit's being a 'functional family'

---

[6] Although the application as described in Applicant's "Revised Construction Plan" is clear that the occupancy per unit may fluctuate and is not restricted to one-person-per-designated-bedroom, we note that the Planning Commission characterized the proposal as an occupancy limit of a total of 13 occupants for the former nursing home building.

unit, courts generally rule "that any living arrangement which makes use of unified housekeeping facilities satisfies such an ordinance." 2 Edward H. Ziegler, Jr., Rathkopf's the Law of Zoning §17A.03(a).

In analyzing this issue, this Court has taken a similar functional approach to examine the way in which the particular apartment or unit is or may be used by its occupants. As long as the residents of each unit use that unit's kitchen, dining, and living room facilities in common (even if they are able to lock their own bedroom doors), and proportionately pay the utilities and the rent, the multi-family unit may qualify as a "housekeeping unit." See, e.g., In re: Appeal of John Mentes, Docket No. 132-6-00, slip op. at 4 (Vt. Envtl. Ct., Oct. 22, 2001).

Each of the three multi-family units in the building at 28 Prospect Street is proposed to be on a separate lease; all the tenants in each unit will be included on that unit's lease (that is, each resident will not separately rent a bedroom), and no locks will be installed on internal doors. Assuming as discussed above that the kitchen on the common wall between the house and the wing is the kitchen for the wing apartment, both the first floor house apartment and the second floor house apartment have sufficient common facilities: a common kitchen and a common living room or lounge, as well as at least one bathroom available to the residents (that is, not having access only through a bedroom), to constitute a "housekeeping unit."

On the other hand, the proposed wing apartment does not have sufficient common facilities to constitute a "housekeeping unit." While it has a common kitchen and a common shower, it has no common living room or lounge, and has no toilet facilities available to the residents that can be reached without going through a potential bedroom. Thus, until a common lounge or living room area, and at least a half bath (as well as the existing shower) available to all the residents, is proposed for the wing apartment, site plan approval must be denied, because the proposed use of the wing apartment does not qualify

6

as a dwelling unit within the six-unit multi-family dwelling proposed for the property as a whole.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant's motion for summary judgment is GRANTED only as to the wing apartment of Applicant's proposed multi-family dwelling, as it does not contain sufficient common facilities to qualify as a "housekeeping unit." Appellant's motion for summary judgment is DENIED and Applicant's motion for summary judgment is GRANTED as to the first-floor house apartment and the second-floor house apartment. Accordingly, site plan approval must also be DENIED, concluding this appeal. However, this denial is specifically without prejudice to Applicant's submittal of any subsequent application for site plan approval, even one that proposes the same division of units within the former nursing home, but so that the wing apartment contains enough common facilities to qualify as a housekeeping unit.

This decision concludes this appeal; any future appeal from a future decision by the Planning Commission would be a new appeal and would receive a new docket number.

Done at Berlin, Vermont, this 21st day of June, 2006.

_____
Merideth Wright
Environmental Judge

7